

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

RCH/NJM
F. #2019R0020

July 28, 2022

**To be filed in redacted form**

By ECF

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Robert Hassett
                Criminal Docket No. 21-254 (RPK)

Dear Judge Kovner:

      The government respectfully submits this letter in advance of sentencing in the above-referenced case, scheduled for August 4, 2022, at 2:00 p.m. On October 7, 2021, the defendant Robert Hassett pled guilty before this Court to conspiring to use instrumentalities of interstate commerce to engage in Bribery in the Third Degree and Bribe Receiving in the Third Degree, contrary to New York Penal Laws §§ 200.00 and 200.10, all in violation of 18 U.S.C. §§ 1952(a)(3)(A) and 371. For the reasons set forth below, a sentence of 18 months' imprisonment is appropriate in this case.

      I.    Background

      The defendant was a New York City Police Department ("NYPD") officer assigned to the 105th Precinct in Queens, New York, until his arrest in May 2021 and his subsequent resignation in October 2021. See Presentence Investigation Report, dated January 25, 2022 ("PSR") ¶¶ 18, 63. While an NYPD officer in the 105th Precinct in Queens, New York, the defendant accepted approximately $10,000 in bribes for engaging in two corrupt schemes, as detailed below.

      Beginning in approximately September 2016, the defendant, working with then-NYPD Officer Robert Smith, engaged in a corrupt scheme whereby, after responding as

NYPD officers to automobile accidents, they would steer damaged vehicles to a specific tow trucking and automobile repair business (the "Business") operated by another individual ("Individual No. 1") in lieu of administering the NYPD's Directed Accident Response Program ("DARP") as required (the "Tow Truck Scheme"). PSR ¶ 6. In exchange for their participation in the Tow Truck Scheme, the defendant and Smith received thousands of dollars in cash bribe payments from Individual No. 1. Id. The defendant and Smith suspended their participation in the Tow Truck Scheme, after Individual No. 1 was arrested; in approximately 2017, the defendant was transferred to an administrative unit at the 105th Precinct. Id.

Years after the defendant's transfer, in January 2020, the defendant and Smith agreed to participate in a second corrupt scheme with Individual No. 1, whereby they would obtain the names and identifying information of recent automobile accident vehicles from NYPD databases and provide that information to Individual No. 1 in exchange for cash bribe payments, so that this information could then be sold to physical therapy businesses and personal injury attorneys (the "Victim Database Scheme"). PSR ¶ 9. The defendant accessed NYPD databases and retrieved the names and identifying information of recent automobile accident victims on numerous occasions and arranged for the information to be delivered to Individual No. 1, either directly or through the defendant. PSR ¶ 10. In total, between January 2020 and March 2020, the defendant and Smith provided Individual No. 1 with the names and identifying information of more than 100 recent automobile accident victims accessed through NYPD databases, in exchange for more than $7,000 in cash bribe payments. PSR ¶ 11. In total, by participating in the Tow Truck Scheme and the Victim Database Scheme, the defendant received at least $10,000 in cash bribe payments. PSR ¶ 18.

II.  Sentencing Guidelines Calculation

The government agrees with the United States Sentencing Guidelines ("U.S.S.G. or the "Guidelines") calculation of the total offense level as calculated in the PSR, set forth again below:

Count Three: Conspiracy to Use Interstate Facilities to Commit Bribery

| | |
|---|---|
| Base Offense Level (U.S.S.G. §§ 2X1.1(a), 2C1.1(a)(1)) | 14 |
| Offense Involved More Than One Bribe (U.S.S.G. § 2C1.1(b)(1)) | +2 |
| Offense Involved Receipt of More Than $6,500 (U.S.S.G. §§ 2C1.1(b)(2). 2B1.1(b)(1)(B)) | +2 |
| Defendant Was a Public Official in a Sensitive Position (U.S.S.G. § 2C1.1(b)(3)) | +4 |

| | |
|---|---:|
| Acceptance of Responsibility<br>(U.S.S.G. §§ 3E1.1(a) and (b)) | <u>-3</u> |
| Total: | <u>19</u> |

Based on a Criminal History Category of I, a total adjusted offense level of 19 results in an advisory Guidelines range of 30 to 37 months of imprisonment. PSR ¶ 74.

### III. Legal Standard

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." <u>Gall v. United States</u>, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." <u>Id.</u> at 50 (citation and footnote omitted).

Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct; [and]

    (C)    to protect the public from further crimes of the defendant.

"[I]n determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, [the Court] shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

It is well-settled that, at sentencing, "the court is virtually unfettered with respect to the information it may consider." <u>United States v. Alexander</u>, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, Title 18, United States Code, Section 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person

convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Thus, the Court must first calculate the correct Guidelines range, and then apply the Section 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

IV. Discussion

The government respectfully submits that the Court should impose an incarceratory sentence because such a sentence is is appropriate to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Such a sentence will both provide appropriate punishment for the "nature and circumstances of the offense" as well as further the aims of specific and general deterrence. See id. §§ 3553(a)(1), (a)(2)(B) & (a)(2)(C).



B. Nature and Circumstances of the Offense, Respect for the Law and Just Punishment

The nature and circumstances of the defendant's offenses are very serious. Over the course of years, the defendant accepted at least $10,000 in bribes, while employed as an NYPD officer and charged with upholding the law, to engage in multiple corrupt schemes, including schemes that divulged private information entrusted to the NYPD by automobile accident victims in exchange for profit and, with respect to the Tow Truck Scheme, jeopardized public safety.

Specifically, law enforcement learned from numerous sources during the investigation that absent DARP rules, or when DARP is not followed, tow-truck drivers monitor police radio scanners and race to the scenes of local accidents, resulting in unsafe driving that often results in serious injury.

In attempting to "lessen" the seriousness of his crime, the defendant argues both that his crime was "victimless" and that he is a "first [time] offender." Def. Ltr. at 8. But the defendant's crimes did have victims—he shared private information in the Victim Database Scheme, and he steered business away from DARP-compliant businesses in the Tow Truck Scheme. But the real damage done by the defendant was to the NYPD and to the public.

The defendant's conduct deeply undermined the public's trust in the integrity of its law enforcement officers at a time in which the public's confidence in the police is particularly vulnerable. See Aimee Ortiz, "Confidence in Police Is at Record Low, Gallup Survey Finds," Aug. 12, 2020, N.Y. Times, available at https://www.nytimes.com/2020/08/12/us/gallup-poll-police.html. Without trust in the fair, evenhanded and uncorruptible pursuit of justice, the rule of law disintegrates. "The democratic acceptance of . . . effective but proportionate law enforcement [is among] the building blocks of trust and the single most important antidote against the violent expression of dissatisfaction, greed, and lust for power at the expense of other human beings." Ernst M.H. Hirsch Ballin, "Keynote Address," 110 Am. Soc'y Int'l L. Proc. 347, 349 (2016). When the law is administered even-handedly, citizens can proceed in their lives assured that they will be provided their just desserts. When law enforcement authorities trusted with enforcing the rules exhibit favoritism, corruption and greed, the governed community has no reason to trust the system.

The defendant knew what he was doing was seriously wrong. He worked for months, collecting thousands of dollars in bribes, from Individual No. 1 who was arrested while the scheme was ongoing. Shortly thereafter the defendant was transferred to the Crime Analysis Bureau. But when Individual No. 1 came back, the defendant again agreed to violate the public's trust by collecting information in NYPD databases in exchange for more bribes. PSR ¶¶ 9-11. In March 2020, when Smith vouched for Individual No. 1 saying "Hes [sic] legit," the defendant responded, "I know he is." The defendant wrote, "I don't fucking trust anyone to work with," but was happy to work with a "legit" criminal who paid him bribes. During that scheme, the defendant was nervous, expressing to Smith that he "d[id]n't like walking in [to the UPS store where he dropped the illicit information and picked up his bribe money] 5 days in a row."

Because this crime was serious and undermines the public's trust in the integrity of the law enforcement community of which the defendant was ostensibly a proud member, the just punishment for the offense must restore the public's faith in the evenhanded administration of justice and must demonstrate that nobody is above the law.

C.  History and Characteristics of the Defendant

The history and characteristics of the defendant also justify a sentence of 18 months' imprisonment. See 18 U.S.C. § 3553(a)(1). Whatever positive contributions to society the defendant may have made, these do not mitigate the criminal acts he committed while serving as a law enforcement officer. Indeed, far from being an exemplary police officer, the defendant failed in his most basic duties as a law enforcement officer—to himself obey the law and to investigate and report crimes of which he became aware. Rather than arrest Individual No. 1 upon learning of his attempts to bribe the defendant and Smith in 2016, he joined him, as a cop turned criminal. When the chance came to work with that "legit" person again, the defendant took advantage of it, placing his desire for bribe money ahead of the force that he now claims to admire.

D.  Deterrence

The defendant argues that the Court should ignore the statutory requirement that a sentence must "afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B), because "offenders are not generally aware of penalties for their prospective crimes." Def. Ltr. at 9. But whatever force this logic may hold in other contexts, police officers surely understand the consequences of violating the law. And police officers are sophisticated actors in the criminal justice system who are aware of this case. See Def. Ltr. at 16 (relating the media reports of the case). Accordingly, this case, more than most, will send a message to other would-be corrupt officers, who are evaluating potentially easy money against the risk of being caught—and punished—for their crimes. A non-incarceratory sentence such as that advocated by the defendant would alter the calculus in favor of criminality.

E.  Avoiding Unwarranted Disparities

A sentence of 18 months' imprisonment would help to avoid unwarranted disparities in sentencing. See 18 U.S.C. § 3553(a)(6). According to the latest statistics, for similar violations sentenced under Guidelines Section 3C1.1, 91 percent received incarceratory sentences. The average sentence was 21 months, and the median sentence was 18 months.[1]

In this case, no co-defendant is similarly situated to the defendant. Smith was substantially more culpable and engaged in drug trafficking and gun crimes in addition to receiving bribes. The Court sentenced him to 97 months' imprisonment. See ECF Dkt. No. 75. Heather Busch, on the other hand, received less money and participated only in the Tow Truck Scheme. Her Guidelines were lower, and many of the mitigating circumstances from her case

---

[1]  See U.S. Sentencing Commission Judiciary Sentencing Information, available at https://jsin.ussc.gov/analytics/saw.dll?Dashboard (accessed July 26, 2022).

are not present here. The Court sentenced Busch to six months' imprisonment. ECF Dkt. No. 62.

### F. A Probationary Sentence Would Not Be Appropriate

There are no circumstances in this case that merit departure from the standard practice of imprisoning defendants who commit serious federal offenses, particularly here where those offenses are committed by would-be law enforcement officers and involve a shocking betrayal of public trust. In his sentencing submission, the defendant requests a non-incarceratory sentence, arguing that, because he is an active parent, "it is a necessity that he remain out of custody." Def. Ltr. at 16. But of course, it was a necessity that the defendant, a sworn law enforcement officer, uphold the law, and not break it. It is also a necessity that violations of the public trust meet with "just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Such a punishment requires a term of incarceration.

## V. Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence of 18 months' imprisonment, which would be sufficient, but not greater than necessary, to achieve the goals of sentencing.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/
Ryan C. Harris
Nicholas J. Moscow
Assistant U.S. Attorneys
718-254-7000

cc: Clerk of the Court (RPK) (by ECF)
Jonathan Manley, Esq. (Counsel to the defendant) (by ECF and e-mail)
Shayna Bryant, United States Probation Officer (by e-mail)